IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CAROL BAKER, individually and as Personal Representative of the Estate of Robert Baker, Sr., deceased,<br><br>Plaintiff,<br><br>vs.<br><br>BIG OX ENERGY, LLC, and BIG OX ENERGY-SIOUXLAND, LLC,<br><br>Defendants. | 8:18-CV-381<br><br>MEMORANDUM AND ORDER |

The plaintiff alleged claims against the defendants, two Wisconsin corporations, concerning negligence, private nuisance and strict tort liability. The allegations concern the defendants' alleged responsibility for a sewage and sewer gas infiltration into their residence. The plaintiff's complaint was originally filed in state court, but removed to this court by the defendants pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1332. Filing 1.

The defendants contend that the plaintiff's complaint fails to state a cause of action for relief on several grounds and has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons that follow, the Court will deny the defendants' motion.

I. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009). The complaint must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief. *Id.* at 679.

In assessing a motion to dismiss, a court must take all the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555. The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See Id.* at 545. The court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 556.

A motion to dismiss under Rule 12(b)(6) tests only the sufficiency of the allegations in the complaint, not the sufficiency of the evidence alleged in support of those allegations. *Stamm v. Cty. of Cheyenne, Nebraska*, 326 F. Supp. 2d 832, 847 (D. Neb. 2018); *Harrington v. Hall Cty. Bd. of Supervisors*, No. 4:15-CV-3052, 2016 WL 1274534, at *4 (D. Neb. Mar. 31, 2016).

## II. BACKGROUND

The plaintiff, Carol Baker, and her husband Robert, were residents of South Sioux City, Nebraska, and prior to October 2016 leased a residence

located in the 3800 block of "G" Street. Filing 10-1 at 1. In October 2016, the Bakers were removed from their residence by City personnel due to the infiltration of sewage and sewer gas into their residence. Filing 10-1 at 2. The Bakers were unable to return to their residence, claiming it was rendered uninhabitable due to the sewage and sewer gas infiltration.

The plaintiff's complaint alleges that Big Ox Energy owns, controls and operates Big Ox Energy-Siouxland. But notwithstanding their owner-subsidiary relationship, each has a separate corporate identity, and each is assigned a separate Nebraska state entity number. Filing 10-1 at 2. The plaintiff alleges that the defendants, acting together and for a common purpose, constructed and operated a wastewater treatment facility that received inbound wastewater. Filing 10-1 at 3. The purpose of the defendants' facility was to extract useful material from the City's wastewater influent and then discharge the treatment facility's effluent back into the City's sewer system. In so doing, according to the complaint, the defendants changed the condition, chemistry, and composition of the wastewater stream and thereby changed the gases generated when the defendants' effluent was discharged back into the City's sewer system. Filing 10-1 at 3.

The defendants' treatment process was alleged to be untried and untested, resulting in an effluent whose content and character was unknown before entering the City's wastewater stream. Filing 10-1 at 7. It is these changes to the wastewater influent, effected by the defendants' treatment facility, that caused sewage and sewer gases to escape the South Sioux City sanitary sewer system and invade the plaintiff's residence. Specifically, the plaintiff alleged that the defendants initially tested (or should have tested)

their effluent, which had an irregular composition and a pH[1] that was unacceptable and outside the allowable range. The pH level of the defendants' effluent caused pressures within the City's sewer system that resulted in the infiltration of gases and sewage into some South Sioux City residences, including the plaintiff's residence. Filing 10-1 at 7.

### III. DISCUSSION
#### 1. FAILURE TO DISTINGUISH BETWEEN THE TWO DEFENDANTS

The defendants assert that the complaint lumped both defendants together and thereby does not provide fair notice of the grounds for each defendant's liability. Filing 8 at 3-4. The complaint, however, clearly represents that the defendants have the relationship of a parent company and subsidiary, and are involved in a joint venture with respect to the wastewater treatment facility at issue.

As a general rule, separate corporate identities are to be respected and do not break down simply because one corporation is a subsidiary of another. *Global Credit Services, Inc. v. AMISUB, Inc.*, 508 N.W.2d 836, 842 (Neb. 1993). But the plaintiff's complaint does not rely on the mere allegation that Big Ox Energy-Siouxland is wholly owned by Big Ox Energy. Instead, the complaint alleges a joint venture between the defendants. A joint venture arises by agreement between two or more parties, each contributing cash, labor or property to a common fund, for the purpose of making a profit to be shared and with each having equal voice in the venture. *Global Credit Services*, 508

---

[1] Potential hydrogen (pH) is a measure of acidity or alkalinity on a logarithmic scale of 1 to 14. A pH of less than 7 indicates an acidic effluent, and a pH over 7 indicates an alkaline effluent.

4

N.W.2d at 844; *Kohout v. Bennett Construction,* 894 N.W.2d 821, 829 (Neb. 2017).

In this regard, the plaintiff alleged that the defendants acted together to construct and operate a wastewater treatment facility for the purpose of removing useful materials. It is alleged that the defendants shared control and ownership of the facility. Filing 10-1 at 2-3. These allegations are sufficient to place both defendants on notice as to the plaintiff's claims regarding each defendant's liability. It should also be noted that the defendants do not have separate representation in this matter. If the defendants truly are separate and distinct entities, then the parties may wish to consider whether defendants' counsel could have a concurrent conflict of interest.[2] That matter is not presently before the Court.

## 2. Failure to Allege a Duty

The defendants argue that the plaintiff's negligence claim fails for several reasons, the first of which is a failure to allege a duty that the defendants breached. The complaint outlined nineteen very specific actions the defendants either failed to perform, or refrained from performing, which the plaintiff alleges resulted in her damages. Nearly all of the nineteen cited inactions or omissions reference a provision of the Nebraska Administrative Code, as well as the common law duty to not act negligently. Filing 10-1 at 3-7. The defendants focus their argument on the plaintiff's reference to the Nebraska Administrative Code references, which the defendants claim pertain

---

[2] "[A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: . . . (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client." Neb. Ct. R. of Prof. Cond. § 3-501.7(a).

to the operation and maintenance of state-permitted wastewater treatment facilities.

Under Nebraska law, in a negligence case an actor's duty is to conform to the legal standard of reasonable conduct in the light of the apparent risk. *A.W. v. Lancaster Cty. School Dist. 0001*, 784 N.W.2d 907, 913 (Neb. 2010). "Duty" is defined as an obligation to conform to a standard of conduct to which the law gives recognition and effect. *Id.* at 914. Whether a duty exists is, at its core, a policy decision. *Id.* at 916.

The nineteen specific duties listed in the complaint plainly describe policy and principles of reasonable conduct, and identify reasonable considerations for an actor that intends to discharge an effluent into a municipal sewer system—whether or not that actor is subject to state permitting requirements. The defendants do not explain why the policy considerations applicable to a state-permitted wastewater treatment facility would not be policy considerations for a treatment facility not subject to a state permitting requirement. The plaintiff has sufficiently alleged policy considerations giving rise to the defendants' duty to conform their conduct to standards which the law gives recognition and effect. The defendants will have an opportunity to answer.

### 3. FAILURE TO ALLEGE FACTS SHOWING BREACH OF A DUTY

The defendants assert that the complaint fails to identify the specific facts that support certain aspects of some of the duties the plaintiff alleged were relevant to the defendants' operation of its treatment facility. The defendants' argument, however, confuses the sufficiency of the allegations in the plaintiff's complaint with the volume of evidence necessary to support those allegations after discovery has been completed. *See Stamm*, 326 F. Supp. 2d at

847. The plaintiff alleged, as a factual matter, that the defendants discharged into the City sewer system an effluent from its treatment facility without knowing its content, its chemical properties, and without knowing or ascertaining how the City's sewer system would be affected. These factual allegations are sufficient to raise a reasonable expectation that discovery will reveal evidence to substantiate the plaintiff's claim that the defendants breached their duty to not act negligently. *See Twombly*, 550 U.S. at 545.

### 4. FAILURE TO ALLEGE FACTS SHOWING DAMAGES PROXIMATELY CAUSED BY THE DEFENDANTS' BREACH OF A DUTY

The defendants argue that the plaintiff "failed to allege any facts showing that Big Ox's purported breach . . . proximately caused Plaintiff's injuries." Filing 8 at10-11. According to the defendants, the allegations in the plaintiff's complaint are "conclusory" and insufficient to show proximate cause consistent with the pleading standards established in *Twombly* and *Iqbal*. The defendants misunderstand what are, and are not, ineffective conclusory allegations.

"A pleading that offers 'labels and conclusions' or ' a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly*). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The Iqbal Court identified examples of allegations that are not afforded a presumption of truth. One such allegation was: The petitioners "knew of, condoned, and willfully and maliciously agreed to subject" Iqbal to harsh conditions "as a matter of policy, solely on account of his religion, race and/or national origin and for no legitimate penological interest." *Iqbal*, 556 U.S. at

[680](). The Court concluded that this and other such allegations were nothing more than "formulaic recitations of the elements of a constitutional discrimination case." *[Id.]()*

In contrast, the Court concluded that, if plausible,[3] an allegation that would have allowed Iqbal's complaint to survive dismissal was: The FBI, under Director Mueller, "arrested and detained thousands of Arab Muslim men . . . as part of its investigation of the events of September 11" and that the policy of holding "detainees in highly restrictive conditions of confinement until they were cleared by the FBI was approved by [Attorney General Ashcroft and FBI Director Mueller] in discussions in the weeks after September 11, 2001." *Id.* Certainly, there are several conclusions contained within this allegation, but those conclusions were tied to a factual base. Presumably, had Iqbal linked his conclusory allegation about what Ashcroft and Mueller allegedly "knew of, condoned and willfully and maliciously agreed to" with a factual predicate such as that Ashcroft and Mueller engaged in a two-year campaign to ban all Arab Muslims from coming to the United States, then the allegation would no longer be threadbare and devoid of a factual base. In short, it is not that the allegations in a complaint contain conclusions, it is that the conclusions in the allegation are not supported by a plausible factual base.

But that is not the case with the plaintiff's complaint. The defendants have not directed the Court's attention to a formulaic or threadbare recitation of the elements of a negligence claim backed up by a conclusory statement that

---

[3] The Iqbal Court ultimately concluded that the well-pled factual allegations were implausible given the "obvious alternative explanation for the arrests—that the 9/11 attacks were perpetrated by 19 Arab Muslims, and accordingly, there would be a disparate impact on Arab Muslims as a consequence of a lawful investigation negating an inference of a purposeful, invidious discrimination policy regarding the arrests. *[Iqbal,]() *556 U.S. at 682.

the defendants are liable. Instead, the complaint, read as a whole, alleges that the effluent from the defendants' treatment facility was unstable in its chemistry and composition, and had an excessive and dangerous pH level. This combination of factors caused pressures in the sewer system, which resulted in a reverse flow of gases and the passage of sewer gas and sewage into the plaintiff's residence causing her residence to be uninhabitable.

Although not clearly articulated, the defendants' contention is really that the factual allegations in the complaint do not present a plausible claim for relief. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*).

In support of the defendants' assumed facial implausibility argument, the defendants made several factual representations in their briefing and attached four exhibits, all of which were intended to controvert the allegations in the complaint. The Court will not consider any of the defendants' evidence or factual assertions until, at least, such are included in an answer to the plaintiff's complaint.[4] Examining the factual allegations in the complaint, the

---

[4] When deciding a motion to dismiss under Rule 12(b)(6), the Court is normally limited to considering the facts alleged in the complaint. If the Court considers matters outside the pleadings, the motion to dismiss must be converted to one for summary judgment. Fed. R. Civ. P. 12(d). However, the Court may consider materials that are necessarily embraced by the pleadings without converting the motion. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). Documents necessarily embraced by the pleadings include those whose contents are alleged in a complaint and whose authenticity no party questions, but which are

9

Court finds that the plaintiff has alleged a facially plausible claim that the uninhabitable condition of her residence was proximately caused by the defendants' discharge of an unstable effluent into the City sewer system. Once again, the defendants will have an opportunity to respond to the plaintiff's claims in a properly filed answer.

### 5. PRIVATE NUISANCE.

Under Nebraska law, the defendants may be found liable for a private nuisance if (1) the defendants' conduct is a proximate cause of an invasion of the plaintiff's private use and enjoyment of her residence, and (2) the invasion is intentional and unreasonable, or is otherwise actionable under rules controlling liability for negligence or liability for abnormally dangerous conditions or activities. *Bargmann v. Soll Oil Co.*, 574 N.W.2d 478, 486 (Neb. 1998). The defendants only argue that the plaintiff's complaint fails to state a private nuisance claim because it does not "contain any facts" showing that the defendants' conduct was the legal cause of the invasion to her residence. Filing 8 at 13. The Court has already found that the factual allegations in the complaint allege a facially plausible claim with respect to legal causation.

### 6. STRICT LIABILITY.

The Nebraska Supreme Court has discussed the doctrine of strict tort liability for ultrahazardous (or abnormally dangerous) activities, without expressly adopting the doctrine. *Anderson v. Nashua Corp.*, 519 N.W.2d 275,

---

not physically attached to the pleading. *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012). The exhibits filed by the defendants do not concern matters that are necessarily embraced by the complaint.

280-81 (Neb. 1994); *Fitzpatrick v. US West, Inc.*, 518 N.W.2d 107, 114-15 (Neb. 1994); *see Bargmann v. Soll Oil Co.*, 574 N.W.2d 478, 486 (Neb. 1998); *see also Marmo v. IBP, Inc.*, 362 F. Supp. 2d 1129, 1131-34 (D. Neb. 2005). In *Marmo*, Chief Judge Smith Camp observed that the *Fitzpatrick* court mentioned the Restatement (Second) of Torts §§ 519 and 520 in its discussion of strict liability, and accordingly, adopted the Restatement's analytical framework in deciding a Nebraska strict tort liability issue. This Court, too, thinks the Restatement (Second) of Torts provides the proper framework for an analysis of the plaintiff's allegations regarding a strict liability theory of recovery.

Section 519(1) explains "[o]ne who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." Additionally, strict tort liability is a doctrine that imposes liability regardless of a breach of a duty and even though the utmost care was employed to prevent the harm. *Marmo*, 362 F. Supp. 2d at 1132.

The defendants argue that the plaintiff's complaint fails to state a plausible claim because operation of a facility that processes sewage is not a hazardous activity as a matter of law. Filing 8 at 14-15. The defendants assert that in *Marmo,* Chief Judge Smith Camp concluded that the operation of a wastewater treatment facility is a matter of common usage and not an abnormally dangerous activity as a matter of law. The Court observes that then Chief Judge Smith Camp did not make the finding the defendants purport was made.

The defendants seem to concede for the purpose of their motion that hydrogen sulfide gas may be a dangerous substance. Indeed, ""[h]ydrogen sulfide is a colorless, flammable, extremely hazardous gas with a 'rotten egg' smell." OSHA Fact Sheet, www.osha.gov/SLTC/hydrogensulfide/hazards.html.

11

The plaintiff pled that the defendants either knew or should have known that the effluent they were producing and discharging into the City sewer system was unstable and would cause a reverse flow of gases and sewage into residences. Filing 10-1 at 7. Although the plaintiff's allegation is not pitch perfect in clarity, the plaintiff sufficiently alleged alternative theories of the defendants' responsibility. If the defendants should have known the potential danger that their effluent could cause, then the plaintiff's claim is one of negligence. However, if the defendants knew that their effluent was unstable and had a pH outside the allowable range, but had, nonetheless, exercised the utmost care to prevent the harm the South Sioux City residents experienced, then the plaintiff has alleged a strict tort liability theory of recovery.

The plaintiff is permitted to allege alternative claims for relief. Fed. R. Civ. P. 8(a)(3). Moreover, "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). The issue that was facing Chief Judge Smith Camp in *Marmo* was whether the plaintiffs' complaint stated a negligence or strict tort liability theory of recovery. The same issue is raised by the plaintiff's complaint. But without the defendants' answer and the parties' opportunity for case development through discovery, the Court cannot know which theory is supported by the facts. The defendants' motion to dismiss the plaintiff's strict tort liability theory of recovery is premature and is denied without prejudice.

IT IS ORDERED:

1. The defendants' motion to dismiss (filing 7) is denied.

2. This matter is referred to the Magistrate Judge for case progression.

Dated this 5th day of April 2019.

BY THE COURT:

*John M. Gerrard*

John M. Gerrard
Chief United States District Judge